UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DEWAYNE ANTWONE HILL,**

**Plaintiff,**

**v.** **Case No. 25-cv-1200**

**JOHN LANNOYE,**

**Defendant.**

---

**ORDER**

---

Plaintiff DeWayne Antowne Hill, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Hill was allowed to proceed on a retaliation claim pursuant to the First Amendment and a conditions of confinement claim pursuant to the Eighth Amendment against defendant John Lannoye. Lannoye filed a motion for summary judgment on the ground that Hill failed to exhaust his administrative remedies. (ECF No. 16.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6,10.) The motion is ready for a decision. For the reasons stated below, the court grants Lannoye's motion for summary judgment on exhaustion grounds.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Standard*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

Wisconsin's procedures for inmates exhausting administrative remedies are contained in Wis. Admin. Code Ch. DOC 310 (2018). "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin Code § DOC 310.01(1). The Inmate Complaint Review System (ICRS) is the main process an inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before

filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the corrections complaint examiner. Wis. Admin.

Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The corrections complaint examiner then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The corrections complaint examiner "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the corrections complaint examiner's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the corrections complaint examiner's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Hill's Claims and Attempts to Exhaust his Administrative Remedies*

Hill asserts that on June 6, 2024, while he was incarcerated at Waupun Correctional Institution, he participated in a peaceful protest against the treatment of prisoners at Waupun. (ECF No. 1 at 2.) After the protest, Hill was evaluated by a member of the prison's psychological staff to determine if he was a threat to himself or others. (*Id.*) Staff cleared him for transfer to Green Bay Correctional Institution (GBCI), and he was strip-searched, handcuffed, and placed on a transport van. (*Id.*) When he arrived at GBCI, Hill was placed on observation status in the restricted housing unit. (*Id.* at 2-3.) Hill states he did not tell anyone he was suicidal. (*Id.*)

At some point, Lannoye approached Hill's cell and asked what happened at Waupun. (ECF No. 1 at 3.) Hill told Lannoye to "read the report". (*Id.*) Lannoye responded, "[W]elcome to the GBCI, and I[']m placing you on suicidal watch." (*Id.*) Hill told Lannoye that he was not suicidal, but Lannoye insisted he placing him on suicidal watch. (*Id.*) Hill asserts that being placed on suicidal watch or observation status amounts to a punishment because it rendered him "naked, in a room where the light stays on 24 hours a day, no clothes, food come in bags, not a tray." (*Id.*) Hill further asserts that Lannoye placed him on observation status in retaliation for participating in the protest at Waupun. (*Id.*)

It is undisputed that Hill filed two relevant complaints, GBCI-2024-9234 and GBCI-2024-12457. (ECF No. 24, ¶ 3.) It is also undisputed that Hill took GBCI-2024-9234 through the entire exhaustion process. (*Id.*, ¶¶ 11-17.) In GBCI-2024-9234, Hill states that his "one issue is being place [*sic*] on obs (suicidal watch) when I wasn't suicidal . . . .This was an 8th and 14th amendment violation." (ECF No. 19-2 at 10.)[1] He explained that as part of the process to transfer to GBCI, he had to make a statement on his "TLU" form at Waupun. (*Id.*) He explained that he "wasn't part of any one else's actions and I acted alone. I said [illegible] T.L.U. statement that at 1:45 pm. I was suicidal b/c I didn't want to go back to my cell." (*Id.*) When Hill was later told by Lannoye[2] he was placed on observation status "for suicidal safety." When Hill

[1] The second page of his inmate complaint is less legible, but it's clear that it does not provide retaliation as a rationale for the placement in suicide watch; instead, it again discusses his efforts to get the "obs" classification overturned.

[2] Misidentified as "King" in the inmate complaint

asked Lannoye why, Lannoye stated he was placed on observation status "because of what I wrote on my TLU statement." (*Id.* at 10-11.) Hill then states that the body camera footage would confirm this conversation. (*Id.* at 11.) Ultimately, the inmate complaint was dismissed after being fully appealed on August 9, 2024, because the investigation of the inmate complaint uncovered that Hill was placed on observation status due to his statements about being suicidal on his TLU form. (ECF No. 18, ¶¶ 12, 15, 17.)

On August 21, 2024, Hill filed GBCI-2024-12457, wherein he stated that the investigation of GBCI-2024-9234 was incorrectly conducted. (ECF No. 19-3 at 8.) "If a proper investigation was done, and [body camera footage] was saved [and] was viewed, it would have been proof I wasn't suicidal." (*Id.*) The ICE rejected the inmate complaint because the issue was already addressed through Hill's prior use of the ICRS. (*Id.* at 2.) Hill appealed the rejection, and the reviewing authority upheld the ICE's rejection of the inmate complaint. (*Id.* at 5.)

*Analysis*

Lannoye argues that Hill did not exhaust his administrative remedies because the relevant inmate complaints did not put the institution on notice of either his conditions of confinement claim or his retaliation claim. At the outset, Hill admits he did not file an inmate complaint regarding his conditions of confinement claim because he knew he "wouldn't have been able to fight those harsh conditions once an inmate is placed in that Cell." (ECF No. 23 at 1.) However, this does not excuse Hill from attempting to exhaust his conditions of confinement claim. "No one can *know*

whether administrative requests will be futile; the only way to find out is to try." *Perez v. Wisc. Dept. of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) (emphasis in original). Summary judgment is therefore granted in favor of Lannoye on the conditions of confinement claim.

Turning to the retaliation claim, to exhaust a retaliation claim, an inmate complaint, to appropriately put the institution on notice, "at a minimum . . . must identify two things: the protected conduct that *provoked* the retaliation and the retaliatory act." *Tate v. Litscher*, Case No. 16-C-1503, 2018 WL 2100304 at * 4 (E.D. Wis. May 5, 2018) (citations omitted, emphasis in original). The inmate must alert the institution to the protected conduct or else it will not appreciate that the inmate is alleging conduct that retaliates against constitutionally protected activity.

Here, neither inmate complaint identifies the protected conduct that underlies the allegation of retaliation. GBCI-2024-9234 clearly shows that Lannoye told Hill he was being placed on observation status because of what he wrote on his TLU statement—namely that he was suicidal. The inmate complaint does not mention Hill's participation in the protest or suggest that Lannoye knew he had participated in the protest. As such, the inmate complaint does not put the prison on notice that the inmate is alleging retaliation based on constitutionally protected activity. The importance of specificity matters. It's clear from reviewing the complaint and appeal history that the institution viewed the complaint as a question of psychology: was Hill suicidal or not? (ECF No. 19-2.) Because the complaint is silent about it, no one in the institution ever considered whether the defendant had trumped up a false

suicide watch in retaliation for constitutionally protected activity. That means the plaintiff did not satisfy the purpose of the exhaustion requirement. *Lockett v. Goff,* No. 17-CV-93-JDP, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017) ("Lockett describes the retaliatory act . . . but did not explain his protected conduct that caused the alleged retaliation. This is insufficient to put the state on notice of the nature of the wrong.")

As for GBCI-2024-12457, Hill states that the investigation into GBCI-2024-9234 was botched because body camera footage was not reviewed, and if it had been, it would have been proof that he was not suicidal. Even if true, there is no mention of Hill's participation in the protest or that Lannoye knew about the protests. Regardless, even if this inmate complaint had mentioned retaliation, it was properly rejected because Hill had raised the issue in his earlier complaint. "[A] complaint that is *rejected* for procedural reasons, rather than *dismissed* after a determination on the merits, does not exhaust a prisoner's administrative remedies." *Durley v. Kacyon*, Case No. 21-cv-154-pp, 2022 WL 16530885 at *5 (E.D. Wis. Oct. 29, 2022) (citing *Conyers v. Abitz*, 416 F.3d 580, 584) (emphasis in original). An inmate complaint rejected for procedural reasons, even if appealed, cannot satisfy the exhaustion requirement. *Id.* As such, Hill did not alert the institution of his claims prior to filing his lawsuit. Summary judgment is therefore granted in Lannoye's favor.

## CONCLUSION

For the reasons stated above, Hill failed to demonstrate that he exhausted his administrative remedies for his claims. Therefore, the court grants Lannoye's

summary judgment motion on exhaustion grounds, and Hill's case is dismissed without prejudice. *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Lannoye's motion for summary judgment on exhaustion grounds (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 21st day of September, 2026.

STEPHEN DRIES
United States Magistrate Judge